## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Tampa Division

OAKWOOD INSURANCE COMPANY,

        Plaintiff,

vs.                                    Case No.

NORTH AMERICAN RISK SERVICES, INC.

        Defendant.

_____/

## PLAINTIFF'S COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiff, Oakwood Insurance Company ("Oakwood"), by and through its undersigned counsel, hereby files its Complaint for Damages against Defendant, North American Risk Services, Inc. ("NARS"), to recover damages incurred as a result of NARS' actions in violation of a Claims Servicing Agreement (the "Agreement") between NARS and Mount Beacon Insurance Company ("Mount Beacon"), which was merged into Oakwood, its successor in interest. In furtherance of such purpose, Oakwood alleges the following:

### JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1332.

2.      This is a civil action between citizens of different states.

3.      The amount in controversy in this matter exceeds $75,000.00, exclusive of interest, attorneys' fees, and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

5.      The events giving rise to the causes of action asserted herein occurred in Pinellas County, Florida.

## THE PARTIES

6.      At all material times hereto, Oakwood was a Tennessee corporation with its principal place of business in Davidson County, Nashville, Tennessee.

7.      As explained herein, for all matters pertinent hereto, Oakwood became the successor in interest to Mount Beacon, a Florida insurance company authorized to do business in the State of Florida.

8.      At all times material hereto, NARS was a Delaware corporation with its principal place of business in Altamonte Springs, Seminole County, Florida.

9.      At all times material hereto, NARS was engaged in the business of third-party administration of insurance claims for its insurance company customers.

## FACTUAL ALLEGATIONS

10.      NARS and Mount Beacon entered into a Claims Servicing Agreement (the "Agreement"), attached hereto as Exhibit "A," effective January 1, 2016, under which NARS agreed to be a third-party administrator for Mount Beacon's insurance claims.

11.      The Agreement gave NARS the authority and responsibility to provide adequate claims adjusting and administration to the conclusion of each claim. *See* Exhibit "A" ¶ 2.1.

12.      Among other obligations, NARS agreed to investigate, adjust, settle, and deny claims in accordance with Florida law and applicable company guidelines (See Exhibit "A" ¶ 2.2(a)); maintain an accurate and complete claim file for each claim, (See

2

Exhibit "A" ¶ 2.2(f)); engage outside counsel or personnel to help investigate and adjust claims, (See Exhibit "A" ¶ 2.2(b)); immediately report all cases involving suspected fraud, (See Exhibit "A" ¶ 2.2(k)); provide trained, competent, and licensed claims adjusters to perform services in good faith and in accordance with the law, (See Exhibit "A" ¶ 2.2(h)); and indemnify, defend, and hold harmless Oakwood from and against any and all claims, demands, actions, proceedings, liability, losses, damages, court costs, and attorneys' fees incurred in connection with NARS' claims handling, (See Exhibit "A" ¶ 9.1).

13.     On June 3, 2016, prior to merging with Oakwood, Mount Beacon was acquired by Florida Specialty Acquisitions, LLC ("FSA"), a Florida limited liability company authorized to conduct business within the State of Florida and affiliated with Oakwood.

14.     In February of 2016, FSA considered acquiring Mount Beacon and began conducting its due diligence.

15.     During the due diligence period, FSA discovered that NARS had understaffed its claims servicing program for Mount Beacon and was not fulfilling its obligations under the Agreement and Florida law.

16.     FSA acquired Mount Beacon on June 3, 2016.

17.     Due to concerns about NARS' ability to perform its obligations under the Agreement, on June 16, 2016, NARS and Mount Beacon amended the Agreement as follows:

3

The parties agreed that NARS would continue handling any pending, open, re-opened, and supplemental claims, any pending litigated claims, and any new litigated claims with a date of loss of June 1, 2016, or earlier.

18.     Beginning on July 15, 2016, NARS and FSA acted in accordance with the amendment, and continued to do so until NARS terminated the Agreement.

19.     Even after the parties amended the Agreement, NARS continued to violate its claims handling obligations under the Agreement.

20.     As a result, NARS failed to provide Mount Beacon claims with adequate and sufficient claims adjusting pursuant to the Agreement.

21.     Specifically, in violation of the Agreement, NARS:

    a.  Understaffed the Mount Beacon claims adjusting program for the duration of the Agreement;

    b.  Significantly delayed assessing and processing Mount Beacon claim files;

    c.  Left Mount Beacon claim files inactive for excessively long periods of time;

    d.  Failed to maintain accurate and complete claims files;

    e.  Delayed settling, paying, and closing Mount Beacon cases;

    f.  Failed to send denial letters for multiple Mount Beacon claims;

    g.  Negotiated Mount Beacon claims without sending denial letters;

    h.  Failed to contact insureds to verify their representation by an attorney or public adjuster;

4

      i.   Failed to contact insureds to obtain recorded statements;

      j.   Failed to refer suspected fraud cases to SIU; and

      k.   Failed to review attorney bills for accuracy prior to payment, which resulted in repeated overbilling and overpayment.

22.     In violation of Florida Statute Sections 627.70131, 627.426, 627.7142, and 626.9541, on Mount Beacon claims NARS failed to:

      a.   Pay undisputed claims within 90 days;

      b.   Acknowledge receipt of claims within 14 days;

      c.   Commence investigation of claims within 10 days of receiving a proof of loss;

      d.   Send Reservation of Rights letters to insureds within 30 days;

      e.   Affirm or deny full or partial coverage of claims within 30 days of receiving a proof of loss;

      f.   Adopt and implement standards for proper claim investigation;

      g.   Promptly settle claims;

      h.   Promptly respond to communications relating to claims; and

      i.   Provide a written reasonable explanation for denial of a claim or an offer of settlement.

23.     On January 31, 2017, pursuant to Article 8 of the Agreement, Mount Beacon demanded mediation with NARS to discuss NARS' continued deficiencies in the claims handling process.

5

24.     On February 15, 2017, NARS terminated the Agreement pursuant to Section 11.1(a), which provided for termination without cause upon 90 days' written notice.

25.     During the 90-day period, NARS failed to provide any significant claims handling on any Mount Beacon claim files.

26.     The termination became effective May 16, 2017.

27.     On July 20, 2017, Mount Beacon merged with Oakwood.

28.     Oakwood, the surviving entity, became Mount Beacon's successor in interest, and therefore owns the claim against NARS.

29.     As a result of NARS' breach of its contractual and statutory obligations, Oakwood has been obligated to readjust numerous claim files to address the failure of NARS to comply with the Florida Insurance Code and its contractual obligations.

30.     Pursuant to the Agreement, in any litigation by which one party seeks damages "whether in contract, tort, or both," the prevailing party "shall be awarded any attorney[s'] fees, or any costs and expenses incurred." *See* Exhibit "A" ¶ 13.10.

## COUNT I
## BREACH OF CONTRACT

31.     Oakwood realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein and further states the following.

6

32.    For good and valuable consideration, Mount Beacon and NARS entered into the Agreement, whereby NARS agreed to perform claims handling for Mount Beacon.

33.    Throughout the duration of the Agreement, NARS failed to provide claims handling in accordance with the terms of the Agreement and Florida law.

34.    In fact, NARS' actions in mishandling Mount Beacon claims files violated the terms of the Agreement.

35.    Because NARS failed to fulfill its obligations under the Agreement, NARS is in breach of the Agreement and is liable to Oakwood for damages resulting from its breach.

36.    Oakwood's damages include, without limitation:

    a.  Overpayment on claims due to NARS' inaccurate or incomplete claims files or incompetence in claims handling;

    b.  Cost of increased oversight of NARS' claims handling obligations by Oakwood staff;

    c.  Cost of oversight of litigated claims by general counsel;

    d.  Overpayment on settlements paid in litigated claims; and

    e.  Costs of paying litigated claims resulting from NARS' inability to perform its obligations.

## COUNT II
## NEGLIGENCE

37.    Oakwood realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein and further states the following.

38.    NARS had a duty to act as a reasonable third-party administrator in providing adequate and sufficient claims handling in adjusting Mount Beacon claim files.

39.    Because NARS failed to provide adequate and sufficient claims handling on Mount Beacon files, it breached its statutory and common law duties to Oakwood.

40.    NARS' actions in breaching its duty caused otherwise avoidable damages to Oakwood.

41.    Oakwood's damages include, without limitation:

    a.    Overpayment on claims due to NARS' inaccurate or incomplete claims files or incompetence in claims handling;

    b.    Cost of increased oversight of NARS' claims handling obligations by Oakwood staff;

    c.    Cost of oversight of litigated claims by general counsel;

    d.    Overpayment on settlements paid in litigated claims; and

    e.    Costs of paying litigated claims resulting from NARS' inability to perform its obligations.

8

## COUNT III
## NEGLIGENT MISREPRESENTATION

42.     Oakwood realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein and further states the following.

43.     Before entering into the Agreement, NARS made statements to Mount Beacon that it was willing and able to perform its obligations under the Agreement to handle Mount Beacon claims at the agreed-upon rate of compensation and according to the terms of the Agreement and Florida law.

44.     The ability of NARS to handle Mount Beacon claims according to the terms of the Agreement and Florida law was a material fact essential to Mount Beacon's decision to enter into the Agreement and conduct business with NARS.

45.     NARS intended or expected when it made these representations that Mount Beacon would rely on NARS' statements in deciding to execute and amend the Agreement.

46.     At the time NARS made these representations to Mount Beacon, NARS knew or should have known that the statements were false.

47.     Mount Beacon justifiably relied on NARS' statements that it was willing and able to perform its obligations under the Agreement.

48.     Oakwood, as Mount Beacon's successor in interest, suffered damages due to Mount Beacon's justifiable reliance.

49.     Oakwood's damages include, without limitation:

9

a.  Overpayment on claims due to NARS' inaccurate or incomplete claims files or incompetence in claims handling;

b.  Cost of increased oversight of NARS' claims handling obligations by Oakwood staff;

c.  Cost of oversight of litigated claims by general counsel;

d.  Overpayment on settlements paid in litigated claims; and

e.  Costs of paying litigated claims resulting from NARS' inability to perform its obligations.

WHEREFORE, Plaintiff, Oakwood Insurance Company, respectfully requests judgment against Defendant, North American Risk Services, Inc., for damages, attorneys' fees and court costs, and for such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Oakwood Insurance Company, demands trial by jury on all issues so triable as of right.

Respectfully submitted this 12th day of February, 2018.

Joel S. Fass, Esquire - Trial Counsel
Fla. Bar Number: 0213233
Colodny Fass, PLLC
1401 N.W. 136 Avenue
Suite 200
Sunrise, FL 33323
Telephone:    (954) 492-4010
Facsimile:    (954) 492-1144
jfass@colodnyfass.com

10