# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**OAKWOOD INSURANCE COMPANY,**

  **Plaintiff,**

**v.**                 **Case No: 6:18-cv-437-Orl-31KRS**

**NORTH AMERICAN RISK SERVICES, INC.,**

  **Defendant.**

## ORDER

This Matter comes before the Court without a hearing on the Plaintiff's Motion to Dismiss NARS' Counterclaim (Doc. 38) and the Defendant's Memorandum in Opposition (Doc. 49).

**I. Background**

The Plaintiff, Oakwood Insurance Company ("Oakwood"), filed a Complaint (Doc.1) alleging breach of contract, negligence, and negligent misrepresentation against North American Risk Services, Inc. ("NARS"). NARS filed a Counterclaim (Doc. 28) alleging breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and civil conspiracy claims against Oakwood. Oakwood's claims arise out of a Claims Servicing Agreement ("CSA") between NARS and Mount Beacon Insurance Company ("MBIC"), Oakwood's predecessor.[1] The CSA lasted from January 1, 2016 to May 16, 2017. According to the Counterclaim, the parties entered the CSA because "[MBIC] desired to engage the claims adjusting and administrative

---

[1] Oakwood is the surviving entity of a merger with MBIC, which had occurred on July 20, 2017—after the CSA had ended.

services of NARS and NARS desired to provide such services to [MBIC]." Doc. 28 at 3. "NARS was the third-party claims administrator for [MBIC]." Doc. 49 at 1.

NARS claims that MBIC breached the CSA by "unilaterally terminating the assignment of new daily claims to NARS" and "failing to approve legal invoices submitted by NARS . . . rendering it impossible for NARS to close claims and preform its claims handling work." Doc. 28 at 7. According to NARS, MBIC's actions violated Articles 3.1,[2] 4.3,[3] 9.2,[4] 11.1,[5] and Exhibit A[6] of the CSA. In its Memorandum in Opposition, NARS states that its claims work was re-assigned to Florida Specialty Acquisition, LLC ("FSA") and Florida Specialty Insurance Company ("FSI"), which "left NARS with servicing the expensive, time-consuming, and pending litigated and re-opened claims at inadequate compensation." Doc. 49 at 2. NARS alleges that it suffered damages in the form of unpaid payments for expenses incurred and services provided, as well as lost revenue. Doc. 28 at 8.

**II.     Legal Standards**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

---

[2] This section gives NARS "authority in handling, reserving, and settlement of assigned claims" under the CSA in certain aggregate amounts. Doc. 1-1 at 7.

[3] This section deals with compensation for allocated loss adjustment expenses. *Id.*

[4] This section is an indemnity provision. *Id.* at 10.

[5] This section describes acceptable ways of terminating the CSA. *Id.* at 11.

[6] Exhibit A sets out the compensation structure. *Id.* at 17.

The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

**III. Analysis**

**A. Count I: Breach of Contract**

NARS claims that MBIC breached the CSA. Oakwood argues that NARS failed to adequately plead a breach of contract claim. Doc. 38 at 3. To state a claim for breach of contract under Florida law, a plaintiff must plead (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). A Court must dismiss a breach of contract claim when "'it is unclear what provision or obligation under the contract has been violated.'" *Jordan v. United States Dep't of*

*Educ.*, No. 2:17-cv-683-FTM-99CM, 2018 WL 5300199, at *4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, No. 2:17-cv-683-FTM-99CM, 2018 WL 5293011 (M.D. Fla. Oct. 25, 2018) (quoting *Brush v. Miami Beach Healthcare Grp. Ltd.,* 238 F. Supp. 3d 1359, 1366-67 (S.D. Fla. 2017)).

NARS alleges that MBIC breached the CSA in two ways: first, by failing to pay fees and expenses to NARS, and second, by improperly assigning claims.[7] Doc. 49 at 5-7. NARS' Memorandum in Opposition indicates that the unpaid fees and expenses are alleged in paragraphs 30 and 39 of the Counterclaim. Paragraph 30 makes only a vague reference to unpaid fees and expenses, alleging simply that "[NARS] had not been paid the full fees and expenses (including copying charges) to which it was entitled under the CSA." Doc. 28 at 6. Paragraph 39 says that "Due to [MBIC's] failures to perform under the CSA and resulting material breaches, NARS suffered damages, including but not limited to: (a) unpaid payments for expenses; (b) unpaid payments for services provided; and (c) lost revenue." Doc. 28 at 6. It is not clear what expenses and services were provided without payment, nor is it clear how exactly a breach of contract caused any damages. NARS does not provide enough detail to state a claim for breach of contract under the circumstances.

With respect to the alleged breach by the improper assignment of claims, NARS cites provisions of the CSA, but none of them indicate that NARS had exclusive rights to all assignments. And in its Memorandum in Opposition, NARS does not claim that the CSA had an exclusivity provision, nor does it point to any provision that disallows assignments to entities other than NARS. Thus, NARS has not adequately pled that Oakwood breached the CSA by improperly assigning claims.

---

[7] While it appears that those are the two major allegations, the Counterclaim incorporates by reference the first thirty-two paragraphs into every individual claim. Due to the shotgun nature of the Counterclaim, it is difficult to distinguish between the different claims.

### B. Count II: Breach of Implied Covenant of Good Faith and Fair Dealing

NARS claims that MBIC breached the implied covenant of good faith and fair dealing by re-assigning claims and failing "to act," "pay," and "respond to NARS." Doc. 28 at 9. Florida law recognizes an implied covenant of good faith and fair dealing in every contract. *QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012). However, there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement. *Id.* Here, NARS does not allege any express term of the CSA that can support its allegation of breach of the implied covenant of good faith and fair dealing. Accordingly, Count II will be dismissed.

### C. Count III: Negligence

NARS claims that MBIC acted negligently when it failed to perform its obligations under the CSA. Doc. 28 at 10. In order to state a claim for negligence, four elements must be pled: (1) a duty "to conform to a certain standard of conduct, for the protection of others against unreasonable risks;" (2) breach of that duty; (3) "a reasonably close causal connection between the conduct and the resulting injury;" and (4) damages. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). In order to hold a party liable for negligence in a breach of contract case, the allegedly negligent conduct must constitute an independent tort. *See Martinez v. QBE Specialty Ins. Co.*, No. 8:18-cv-263-T-36AAS, 2018 WL 4354831, at *5 (M.D. Fla. Sept. 12, 2018). NARS alleges that MBIC breached several duties, but all of them are alleged breaches of the CSA. NARS does not describe any independent tort. Consequently, NARS fails to state a claim for negligence.

### D. Count VII: Civil Conspiracy

NARS alleges that MBIC, FSA, and FSI conspired to amend the CSA so that FSA and FSI could take over responsibilities that previously belonged to NARS. Doc. 28 at 14. A civil conspiracy claim requires: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008). An actionable conspiracy also requires an independent and actionable underlying tort or wrong. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). The claim for civil conspiracy is nothing more than rephrasing of NARS's breach of contract allegations. Since the contract was not breached by the assignment of claims to FSA and FSI, there is no basis for a civil conspiracy claim.

### IV. Conclusion

For the foregoing reasons, Oakwood's Motion to Dismiss (Doc. 38) is **GRANTED**. NARS' Counterclaim (Doc. 28) is **DISMISSED** without prejudice. If NARS wishes to file an amended counterclaim, it may do so within twenty-one (21) days of the date of this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 11, 2019.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party