# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**OAKWOOD INSURANCE COMPANY,**

      **Plaintiff,**

**v.**                                      **Case No: 6:18-cv-437-Orl-31LRH**

**NORTH AMERICAN RISK SERVICES, INC.,**

      **Defendant.**

## ORDER

### I. Background

Initially, the Plaintiff, Oakwood Insurance Company ("Oakwood"), filed a Complaint (Doc.1) alleging breach of contract, negligence, and negligent misrepresentation against North American Risk Services, Inc. ("NARS"). NARS filed a Counterclaim (Doc. 28) alleging breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and civil conspiracy claims against Oakwood. The Court dismissed Oakwood's Complaint in part. Doc. 37. Later, the Court dismissed NARS' Counterclaim in full. Doc. 59. The subject of the instant Motion to Dismiss is NARS' Amended Counterclaim, which alleges breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, unjust enrichment, and negligence. Doc. 61.

The claims at issue arise out of a Claims Servicing Agreement ("CSA") between NARS and Mount Beacon Insurance Company ("MBIC"), Oakwood's predecessor.[1] The CSA lasted from

---

[1] Oakwood is the surviving entity of a merger with MBIC, which had occurred on July 20, 2017—after the CSA had ended.

January 1, 2016 to May 16, 2017. According to the Counterclaim, the parties entered the CSA because "[MBIC] desired to engage the claims adjusting and administrative services of NARS and NARS desired to provide such services to [MBIC]." Doc. 61 at 4. NARS acted as the third-party claims administrator for MBIC.

## II.     Legal Standards

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at

555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### III. Analysis

#### A. Count I: Breach of Contract

NARS alleges that MBIC breached the CSA and that it suffered damages as a result. According to NARS, MBIC's actions violated Articles 3.1,[2] 4.1,[3] 4.2,[4] 4.3,[5] 9.2,[6] 11.1,[7] 13.2,[8] and Exhibit A[9] of the CSA. NARS states that the lucrative claims work was re-assigned to Florida Specialty Acquisition, LLC ("FSA") and Florida Specialty Insurance Company ("FSI"). Doc. 69 at 8. Additionally, NARS alleges that, due to MBIC's breaches and unilateral amendment of the CSA, it suffered damages in the form of unpaid payments for expenses incurred and services provided, as well as lost revenue. *See* Doc. 61 at 7-8.

Oakwood argues that NARS failed to adequately plead a breach of contract claim. To state a claim for breach of contract under Florida law, a plaintiff must plead (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach. *Vega v. T-Mobile*

---

[2] This section gives NARS "authority in handling, reserving, and settlement of assigned claims" under the CSA in certain aggregate amounts. Doc. 1-1 at 7.

[3] This section deals with the agreement to pay NARS a fee as set forth in Exhibit A to the CSA.

[4] This section deals with the expenses that NARS is responsible for.

[5] This section deals with compensation for allocated loss adjustment expenses. *Id*.

[6] This section is an indemnity provision. *Id*. at 10.

[7] This section describes acceptable ways of terminating the CSA. *Id*. at 11.

[8] This section is a general provision that, among other things, declares that no amendment of the CSA will be binding "unless executed in writing by all the Parties."

[9] Exhibit A sets out the compensation structure. *Id*. at 17.

*USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). A Court must dismiss a breach of contract claim when "'it is unclear what provision or obligation under the contract has been violated.'" *Jordan v. United States Dep't of Educ.*, No. 2:17-cv-683-FTM-99CM, 2018 WL 5300199, at *4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, No. 2:17-cv-683-FTM-99CM, 2018 WL 5293011 (M.D. Fla. Oct. 25, 2018) (quoting *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1366-67 (S.D. Fla. 2017). The breaches alleged by NARS are addressed in turn below. The Court separates each Count into subsections consistent with their separation in the Amended Counterclaim.

### 1. Failing to Pay Amounts Due for Claims Services Provided

NARS alleges that MBIC "failed to pay NARS the Opening Fee and Closing Fee to which it was entitled." Doc. 69 at 2. NARS describes the unpaid fees and expenses with sufficient specificity; it lists the amount of the fees it was entitled to in paragraph 35. NARS also cites to the particular sections of the CSA that it alleges MBIC breached by failing to pay those fees. Accordingly, NARS' claim for breach of contract can survive dismissal to the extent that it deals with these unpaid fees and expenses found in paragraphs 34 and 35 of the Amended Counterclaim.

### 2. Supplemental Fee Agreement

NARS alleges that, after having entered into the CSA, NARS and MBIC "mutually agreed to a related fee agreement ('Supplemental Fee Agreement') for categories of claims (i.e., existing and reopened claims) not specifically covered in [the CSA]". Doc. 61 ¶ 36. Apparently, two persons, one from NARS and one from MBIC, exchanged email correspondence about the agreement. *Id.* Following that email exchange, an agreement was reached. *Id.* NARS lays out the particular terms of the Supplemental Fee Agreement in paragraph 37 of the Amended Counterclaim. NARS alleges that it and MBIC mutually assented to the Supplemental Fee Agreement, that NARS performed

consistently with its terms, and that MBIC received and accepted benefits as a result, including "servicing by NARS of claims which were not specifically addressed in the CSA," such as "open claims that NARS closed during the contract but then reopened, and claims which were already closed when NARS took them over but then reopened during the contract period." *Id.* ¶ 38. According to NARS, MBIC failed to pay amounts due and owes NARS money under the fee arrangements in the Supplemental Fee Agreement. The particular amounts of fees owed are detailed in paragraph 40 of the Amended Counterclaim.

Oakwood argues that "the alleged supplemental fee agreement is not enforceable." Doc. 68 at 9. Oakwood correctly points out that the email correspondence described by NARS in the Amended Counterclaim is nothing more than an agreement to agree. However, NARS is not claiming that those emails are the Supplemental Fee Agreement. Instead, the NARS lays out the terms of the Supplemental Fee Agreement and alleges that those terms were breached.

What remains unclear even after a review of the Amended Counterclaim and the Memorandum in Opposition, however, is whether the Supplemental Fee Agreement was written or oral. The Memorandum in Opposition refers to it as oral at times. Conversely, NARS also refers to the Supplemental Fee Agreement as being entered into "orally and/or in writing." Doc. 69 at 15. In a footnote, NARS argues that, despite the language of Article 13.2,[10] an oral modification is permissible under *Okeechobee Resorts, LLC v. E Z Cash Pawn*, 145 So.3d 989, 995 (Fla. 4th DCA 2014), because, if not permitted, it would "work a fraud against NARS." *Id.* at 16 n.10. The Court cannot make a determination as to whether the Supplemental Fee Agreement was a permissible oral

---

[10] As discussed *infra* in connection with NARS' claim for breach of contract based on unilateral amendments of the CSA by MBIC, Article 13.2 of the CSA states that no amendment of the CSA is "binding unless executed in writing by all the parties."

modification of the CSA if the Court does not know whether the Supplemental Fee Agreement was oral or written.[11] Accordingly, Count I will be dismissed to the extent that it alleges a breach of the Supplemental Fee Agreement.

### 3. Failure to Pay NARS for Allocated Loss Adjustment Expenses Incurred

NARS alleges that MBIC failed to reimburse NARS for Allocated Loss Adjustment Expenses, including copying of claims files and shipping charges. Doc. 61 ¶ 41-43. NARS lists the total amount owed in paragraph 43 of the Amended Counterclaim. NARS has sufficiently alleged a breach of contract with respect to failure to reimburse for allocated loss adjustment expenses incurred.

### 4. Unilateral Amendments

NARS also claims that MBIC breached the CSA by "unilaterally amending parts of the CSA which caused NARS substantial damages." Doc. 61 at 12. NARS lists amendments that caused it to suffer damages, including amendments to Article 3.1 of the CSA and Exhibit B Program Handling Guidelines to the CSA, detailed in paragraph 46 of the Amended Counterclaim. As a result, NARS allegedly suffered "substantial damages in the form of increased costs and resources it had to spend and devote to each claim, and in delay or failure to receive the Closing Fees to which it was entitled under the fee arrangement." Doc. 61 ¶ 48. Oakwood acknowledges that, despite the "general anti-amendment language in [the CSA]," because MBIC retained settlement authority for all claims serviced under the CSA, it was permitted to unilaterally amend the CSA. However, Oakwood's argument is not persuasive. Article 13.2 of the CSA plainly states that no amendment of the CSA is "binding unless executed in writing by all the parties." Viewing the Counterclaim in the light most

---

[11] The Court notes that it appears NARS is being intentionally vague and inconsistent with respect to whether the Supplemental Fee Agreement was oral or written. The Court advises NARS to familiarize itself with 28 U.S.C. § 1927 before filing any future pleadings.

favorable to the nonmovant, NARS has sufficiently pled that MBIC breached the CSA by unilaterally amending parts of the CSA.

### 5. Improper Assignment

In an effort to support its allegation of breach by the improper assignment of claims, NARS cites various provisions of the CSA, but none of them indicate that NARS had exclusive rights to all assignments. NARS claims that "[t]he CSA has a latent ambiguity," because it "is silent on the direct issue of whether Mount Beacon may assign NARS' assigned claims to other third party administrators during the term of the CSA." Doc. 61 at 14. However, the CSA is clear and unambiguous on this point. The CSA has no exclusivity provision, and it does not contain any provision that disallows assignment of claims to entities other than NARS. Accordingly, Count I will be dismissed to the extent that it alleges improper assignment of claims.

### B. Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing Against Oakwood

NARS claims that MBIC breached the implied covenant of good faith and fair dealing by re-assigning claims and failing to respond to NARS' written settlement authority requests and requests for invoice approvals." Doc. 61 at 18-26. Florida law recognizes an implied covenant of good faith and fair dealing in every contract. *QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012). However, there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement. *Id.* Here, NARS does not allege any express term of the CSA that can support its allegation of breach of the implied covenant of good faith and fair dealing with respect to the re-assignment of claims. Accordingly, Count II will be dismissed to the extent that it deals with re-assignment of claims.

However, NARS has stated a claim for breach of the implied covenant of good faith and fair dealing with respect to the failure to respond to NARS' written settlement authority requests and requests for invoice approvals.

### C. Counts III and IV: Quantum Meruit and Unjust Enrichment

NARS attempts to state claims for both Quantum Meruit and Unjust Enrichment. An action for quantum meruit cannot be maintained where a written contract describes the rights of the parties. *Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc.*, 565 F.3d 1293, 1301 (11th Cir. 2009). This is also true of unjust enrichment claims. *White Holding Co., LLC v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 946 (11th Cir. 2011). Oakwood correctly argues that NARS' claims for quantum meruit and unjust enrichment both fail, because there is an express governing contract. NARS contends that unjust enrichment and quantum meruit with respect to the unilateral amendments and Supplemental Fee Agreement are appropriate alternatives should the Court find them unenforceable. But regardless of the enforceability of the Supplemental Fee Agreement or the unilateral amendments, the CSA still describes the rights of the parties. Accordingly, Counts III and IV will be dismissed.

### D. Count V: Negligence

NARS claims that MBIC acted negligently when it failed to perform its obligations under the CSA. In order to state a claim for negligence, four elements must be pled: (1) a duty "to conform to a certain standard of conduct, for the protection of others against unreasonable risks;" (2) breach of that duty; (3) "a reasonably close causal connection between the conduct and the resulting injury;" and (4) damages. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). In order to hold a party liable for negligence in a breach of contract case, the allegedly negligent conduct must constitute an independent tort. *See Martinez v. QBE Specialty Ins. Co.*, No. 8:18-cv-263-T-36AAS,

2018 WL 4354831, at *5 (M.D. Fla. Sept. 12, 2018). NARS alleges that MBIC breached several duties, but all of them are alleged breaches of the CSA. NARS does not describe any independent tort. Consequently, NARS fails to state a claim for negligence and Count V will be dismissed.

### IV. Conclusion

For the foregoing reasons, Oakwood's Motion to Dismiss (Doc. 68) is **GRANTED IN PART AND DENIED IN PART**. Count I is **DISMISSED** in part to the extent that it alleges improper assignment of claims and breach of the Supplemental Fee Agreement. Count II is **DISMISSED** in part to the extent that its allegations are based on re-assignment of claims. Counts III, IV, and V are **DISMISSED with prejudice**. If NARS wishes to file one last amended counterclaim, it may do so within fifteen (15) days of the date of this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 22, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party